UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANIMAL OUTLOOK,

       *Plaintiff*,

  v.

AMERICAN HEART ASSOCIATION,
INC., et al.,

       *Defendants*.

Civil Action No. 1:22-cv-02842 (CJN)

### ORDER

    This matter is before the Court on Defendant American Heart Association's Motion to Dismiss. ECF No. 4-1 ("Mot."). Plaintiff Animal Outlook sued AHA for "knowingly and actively misleading consumers . . . regarding the cardiovascular effects of eating beef." ECF No. 1-1 ("Compl.") at 1. In response, AHA moved to dismiss in part on the ground that Animal Outlook lacks standing to sue. Mot. at 8–11.

    As relevant here, AHA is "the nation's oldest and largest voluntary organization dedicated to fighting cardiovascular diseases." Compl. ¶ 15. One of AHA's initiatives is the Heart-Check Certification Program. *Id*. ¶¶ 21–22. Through that program, AHA "endorses certain food products as 'heart healthy' by allowing manufacturers to affix [AHA's Heart-Check Certification] Mark on their products." *Id*. ¶ 1; *see also id*. ¶¶ 21–22. Notably, AHA claims that "it uses its own independent scientific standards to evaluate the products it endorses." *Id*. ¶ 36; *see also id*. ¶¶ 37–40. "AHA also makes statements about the nutritional value of certain food products on its website, on social media, and in other promotional materials." *Id*. ¶ 1; *see also id*. ¶¶ 50–55.

1

"Plaintiff Animal Outlook is a national nonprofit animal advocacy organization whose mission is to challenge the status quo of animal agribusiness . . . and to empower consumers to make more informed decisions about the consumption of animal products, including beef." Compl. ¶ 13. It accuses AHA of deceiving consumers about the health benefits of consuming beef. Specifically, Animal Outlook alleges that AHA has misled consumers by permitting beef producers to place AHA's Heart-Check Certification Mark on their products without disclosing that (1) AHA allows them to do so in exchange for a fee, and (2) AHA's endorsement of beef products is based on federal government standards, not its own independent scientific standards. *Id*. ¶¶ 26–40. Animal Outlook also alleges that AHA has misled consumers by making false public statements about the nutritional value of consuming beef. *Id*. ¶¶ 50–55. And it claims that AHA has done all this despite "know[ing] that its representations about the health benefits of beef are false." *Id*. ¶ 59; *see also id*. ¶¶ 56–60.

As "the party now asserting federal jurisdiction," Animal Outlook bears the burden to show that it has standing to bring suit. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006).[1] Animal Outlook claims that it has organizational standing. ECF No. 19 ("Opp.") at 13–18. To establish organizational standing, a plaintiff must demonstrate that is has suffered a "concrete and demonstrable injury to [its] activities," not a mere "setback" to its "abstract social interests." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). That requires it to show (1) that the defendant's unlawful conduct "injured [its] interests," and (2) that it "used its resources to counter the harm." *White Coat Waste Project, Inc. v. U.S. Dep't of Health & Hum. Servs.*, No. 1:22-cv-00006 (CJN), 2023 WL 4930093, at *3 (D.D.C. Aug. 2, 2023) (citing *Equal Rts. Ctr. v. Post*

---

[1] Although AHA removed this case from D.C. Superior Court, ECF No. 1, Animal Outlook is the "the party now asserting federal jurisdiction" because it has opposed AHA's motion to dismiss for lack of jurisdiction, *see DaimlerChrysler*, 547 U.S. at 342 & n.3; ECF No. 19 at 13–18.

*Properties, Inc.*, 633 F.3d 1136, 1140 (D.C. Cir. 2011)); *accord PETA v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1094 (D.C. Cir. 2015).

Here, Animal Outlook seeks to "end the use of animals in agriculture" in part by publicizing the health risks of consuming animal products, thereby discouraging consumers from eating animals and "reduc[ing]" "consumer demand for animal consumption." *See* ECF No. 19-1 ("Hoffman Decl.") ¶ 2; *see also* Compl. ¶¶ 41–42.[2] Animal Outlook appears to suggest that AHA's actions have injured its interests by contradicting its message. *See* Opp. at 15–16; Hoffman Decl. ¶¶ 4–5; Compl. ¶ 45. It also alleges that it has spent its resources to address that harm. Those expenditures fall into two categories. First, Animal Outlook has engaged in litigation-related activities by investigating the allegedly unlawful activity, sending a demand letter, and eventually filing suit. *See* Hoffman Decl. ¶ 6. Second, it has engaged in educational activities by posting on social media about AHA's activities, thereby diverting "non-legal staff resources that would otherwise be utilized for other projects." *Id.*; *see also* Compl. ¶ 46. Animal Outlook also plans to make similar social media posts about AHA's activities in the future. *See* Hoffman Decl. ¶ 6.

Even assuming that Animal Outlook has established that AHA has injured its interests, Animal Outlook has not shown that it has used its resources to counter that harm in a way that would confer organizational standing. Litigation-related spending like Animal Outlook's cannot confer organizational standing. *See, e.g.*, *PETA*, 797 F.3d at 1093 ("[A]n organization's diversion of resources to litigation or to investigation in anticipation of litigation is considered a 'self-inflicted' budgetary choice that cannot qualify as an injury in fact for purposes of standing." (quotation omitted)). Likewise, an "organization does not suffer an injury in fact where it expends

---

[2] The Court "may consider materials outside the pleadings" when it analyzes "a motion to dismiss for lack of jurisdiction." *Am. Freedom Law Ctr. v. Obama*, 821 F.3d 44, 49 (D.C. Cir. 2016).

resources to educate its members and others unless doing so subjects [it] to operational costs beyond those normally expended." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 920 (D.C. Cir. 2015) (quotation omitted). Animal Outlook has not met its burden because its submissions merely show that its employees posted about the case on social media when they might otherwise have posted about something else, *see* Hoffman Decl. ¶ 6; *see also* Compl. ¶ 46—not that its educational efforts have been (for example) so novel or extensive that it sustained greater operating costs than it would have absent AHA's actions.

In response, Animal Outlook claims that it faces a lower burden to establish organizational standing because it seeks to challenge *private* action, not *governmental* action. *See* Opp. at 16–17. The Court doubts that the standing inquiry should be different depending on whether the defendant is a private or government actor, but in any event, Animal Outlook has failed to meet even the lower burden suggested by the cases on which it relies. *See id*. at 16 (citing *Spann v. Colonial Village, Inc.*, 899 F.2d 24 (D.C. Cir. 1990), and *Fair Emp. Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268 (D.C. Cir. 1994)). Its isolated social media posts about AHA's actions hardly qualify as the sort of substantial and ongoing educational program that *Spann* recognized could lead to a "concrete drain[]" on an organization's resources. *See* 899 F.2d at 27–30; *see also id*. at 28 (noting that the defendants' actions "required the organizations to expend *additional* resources" (emphasis added)). And *Fair Employment Council* recognizes that the mere "diversion of resources" from one of an organization's programs to another is not enough for it to show that it has standing. 28 F.3d at 1276–77.

Animal Outlook also maintains that it does not need Article III standing for one of its claims—an alleged violation of the District of Columbia Consumer Protection Procedures Act— because it has statutory standing. Opp. at 13. Although that may be true in D.C. Superior Court,

*Animal Legal Def. Fund v. Hormel Foods Corp.*, 258 A.3d 174, 181–85 (D.C. 2021), it is not in federal court, *see, e.g.*, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 422–24 (2021).[3]

Accordingly, it is hereby

**ORDERED** that Defendant AHA's Motion to Dismiss, ECF No. 4, is **GRANTED**; and it is further

**ORDERED** that the case is dismissed without prejudice.

This is a final and appealable order.

The Clerk of Court is directed to terminate this case.

DATE: March 21, 2024

CARL J. NICHOLS
United States District Judge

---

[3] Animal Outlook has also sued 20 unidentified defendants—"DOES 1 through 20"—but alleges nothing about them. Compl. ¶ 16. Regardless of their identities and whether they are private or government actors, Animal Outlook has not established standing to sue them based on its Complaint and the Hoffman Declaration for the reasons previously explained in this Order.